ROLAND *v.* TIFT, and *vice versa.*

1. Where the owner of a sawmill operates in connection therewith a private railroad for the purpose of transporting his employees from the mill to their work in the woods, and of hauling logs from the woods to the mill, the servants engaged in operating the log train and the servants riding thereon from the mill to their work are fellow-servants; and the owner of the mill is not liable to one of the servants injured in the operation of the train by the negligence of his coservants.

2. A petition by a servant against his master, for personal injuries sustained in his service, alleged, that the master operated a sawmill, and in connection therewith a private railroad for the purpose of transporting his employees from the mill to their work in the woods, and hauling logs to the mill; and that while being transported on a log train to his work he was injured in the wreck of the train caused by its collision with a tree which had fallen on the track; and that the negligence of the master consisted in knowingly permitting the tree, which was dead and in such bad and defective condition that it was liable at any time to fall upon the track, to remain in such close proximity that it might and did fall on the track. The petition was defective, because of the failure to allege that the servant did not know of the location of the tree and its defective condition, or could not have known thereof by the exercise of ordinary care.

Argued April 7,—Decided December 16, 1908.

Action for damages. Before Judge Mitchell. Tift superior court. December 9, 1907. ·

*M. Felton Hatcher, Buie & Knight, J. J. Murray,* and *Richard Curd,* for plaintiff.

*Fulwood & Murray,* by *Z. D. Harrison,* for defendant.

EVANS, P. J. This case comes before us on an exception to the dismissal of the plaintiff's case on general demurrer. The petition was brought by Joseph Roland against H. H. Tift, to recover damages for a personal injury, and contained the following allegations, in substance: In February, 1902, Tift owned and was operating a

sawmill. In connection therewith he operated a railroad (not chartered) for the purpose of hauling logs to the mill to be manufactured into lumber, and transporting his employees to and from their work at the mill and in the woods. Early in the morning, and before day, petitioner, who was an employee, with other employees, was being transported on a log-train from the mill to the woods to begin work, and while on the way the log-train ran against a tree which had fallen on the track, and was wrecked. In the collision of the log-train with the obstruction on the track petitioner sustained injuries specifically described. It was not a part of the duty of petitioner to run the train, nor to look after or keep the track in order. The plaintiff at the time of the injury was riding on one of the cars of the train, being carried to his work. He was on the train by authority of the defendant, to be transported to his work, and was neither a trespasser nor a coemployee of the servants engaged in running the train. The negligence of the defendant consisted in running the train backwards, in a careless and reckless manner, without proper lights on the forward end of the train, without keeping a lookout for obstructions, and in the recklessness of the servants in charge of the train, who, upon discovery of the log on the track, attempted to break the log or throw it from the track by greatly increasing the speed of the train. It was also alleged that the defendant knew or could have known that the tree was dangerously near the railroad track and liable to fall on the same. This latter allegation was amplified by an amendment alleging, that the defendant was negligent in permitting the tree to stand in dangerous proximity to the railroad track, and in not removing the tree from a place where it could and did fall on the track; that the tree was in a bad and defective condition, being a dead tree and liable to fall on the track at any time; all of which was known to the defendant, or could have been known by the exercise of ordinary care. It is also alleged that petitioner could not have avoided the consequences of the defendant's negligence by the exercise of proper care.

The relation of master and servant existed between the plaintiff and defendant at the time of the former's injury. The plaintiff predicates the defendant's liability (1) upon the negligence of the servants in the operation of the train, and (2) upon the negligence of the master in permitting a dead tree which was liable to fall

at any time to stand in dangerous proximity to the railroad track. As to the first ground of liability: It does not appear what was the exact character of the plaintiff's work; but as it is alleged that he was being transported to his work in the woods at the time he sustained his injuries, and that the train on which he was riding was a log-train, employed in hauling logs to the mill, he was probably a wood-cutter. Whether employed as a wood-cutter or performing other work in the woods, it clearly appears that the plaintiff's employment was connected with the operation of the sawmill. There is an averment that the plaintiff was not a coemployee of the servants engaged in operating the train. This allegation, however, is but the statement of the legal conclusion that the relation of fellow-servant did not exist between the plaintiff and the servants in charge of the train, from the facts alleged. This conclusion is unwarranted. The petition discloses that the master was engaged in operating a sawmill, and in the conduct of his business used various instrumentalities, and assigned his servants to the discharge of duties in the different departments of his enterprise. One set of servants managed the train which conveyed other servants to and from their work in the woods, and hauled the logs cut by them to the mill; another set of servants cut the trees into logs ready to be manufactured into lumber; others loaded them on the train to be conveyed to the mill; and still other servants operated the mill. All of these servants were engaged in labor for the furtherance of the general purpose of the business in which they had contracted to serve, and were fellow-servants within the purview of the Civil Code, §2610, which provides, that, "Except in case of railroad companies, the master is not liable to one servant for injuries arising from the negligence or misconduct of other servants about the same business." *Ga. Coal & Iron Co.* v. *Bradford,* 131 *Ga.* 289 (62 S. E. 193); *White* v. *Kennon,* 83 *Ga.* 343 (9 S. E. 1082); *Ellington* v. *Beaver Dam Co.,* 93 *Ga.* 53 (19 S. E. 21); *Railey* v. *Garbutt,* 112 *Ga.* 288 (37 S. E. 360). Whether the transportation of the plaintiff was gratuitous, or whether it was included in the contract of service, in either case (there being no special payment for the transportation) the plaintiff's transportation to the woods was incident to the service which the plaintiff was to perform, and closely connected with it. *Gillshannon* v. Stony Brook R. Corp., 10 Cush. 228; *McGuirk* v. Shattuck, 160 Mass. 45 (39 Am. St. R.

454, 35 N. E. 110); 2 Labatt on Mas. & Serv. §624. So that the alleged acts of negligence of the defendant's servants in the operation of the log-train afford no basis for an action against the defendant. They and petitioner were fellow-servants, and the defendant is not liable for any injury occasioned to the plaintiff by the negligence of his coservant in operating the train.

It is alleged, secondly, that the master was negligent in knowingly permitting a dead tree to remain so near the track that from its defective condition it was liable at any time to fall upon the track. While the servant was riding to his work in the course of his employment, the reciprocal obligations of himself and the master were not different from those in which they stood after the servant had reached his destination and commenced work in his particular department. The master owes a duty to furnish his servant a reasonably safe place in which to work; and if there are dangers incident to an employment, unknown to the servant, of which the master knows, or ought to know, he must give the servant warning in respect thereto. But the servant assumes the ordinary risks of his employment, and is bound to exercise his own diligence to protect himself. In suits for injuries arising from the negligence of the master, where the dereliction of duty consists in a failure to provide a safe place for work or a failure to warn the servant of an unknown danger, the servant must not only make it appear that the master failed to perform his duty in furnishing a safe place to work, or to warn him of unknown dangers, but also that the servant injured did not know and had not equal means of knowing the defective condition of the instrumentality employed, or of the danger, and by the exercise of ordinary care could not have known thereof. Civil Code, §§2611, 2612; *Turner* v. *Seville Gin Co.,* 127 *Ga.* 555 (56 S. E. 739). The duty of the master who transports his servants to their work in providing safe carriages for their use, where separate compensation for the transportation is not charged, is somewhat analogous to the duty to provide a safe place to work. The fundamental basis of liability of a master to a servant injured in his employment is the master's violation of duty. The servant's assumption of risk becomes, by force of the cited code sections, a term of the contract of employment, by which the servant impliedly agrees that dangers of injury which are incident to the discharge of the servant's duty shall be at the servant's

risk. No right of action arises in favor of the servant at all until it is made to appear that the master has violated his duty; and the servant can not recover of the master damages for an injury resulting from a risk he has legally assumed. It is therefore essential that the servant, in formulating his cause of action against the master, shall allege facts from which the master's dereliction of duty is made to appear; he must allege, either in so many words or in the statement of facts from which the implication may be drawn, that the injury was not the resultant of a risk of danger assumed by him. See *Allen* v. *Augusta Factory,* 82 *Ga.* 79 (8 S. E. 68); *Worlds* v. *Ga. R. Co.,* 99 *Ga.* 283 (25 S. E. 646). In describing the tree and its location, the plaintiff states that it was a dead tree, that it was near the track, and because of its defective condition it was liable at any moment to fall upon the track. The condition of the tree was patent; and from the plaintiff's failure to otherwise aver, we must assume that he knew or at least had equal means with the master of knowing the defective condition of the tree. The provisions of the code section previously cited require that a servant, when he sues for an injury caused by the master's failure to provide for him a safe place to work, or to give him warning of a danger incident to his work, must allege and prove that he did not know of the defective condition, or of the danger, and could not have known thereof by the exercise of ordinary care. The petition is defective in failing to allege that the plaintiff neither knew nor could have known of the defective condition of the tree which fell across the track, derailing the train and resulting in his injury.

Counsel for the plaintiff in error rely strongly on the case of *Corley* v. *Coleman,* 113 *Ga.* 994 (39 S. E. 558). In many respects that case on its facts is very similar to the case in hand. But in that case the plaintiff distinctly alleged that while the condition of the tree which fell upon the track was such as to imperil the lives and safety of the employees upon passing trains, the fact that it was in such condition was not known to the injured servant, and could not have been discovered by him by merely passing the tree. There is no such averment in the petition in this case, and the failure to allege lack of knowledge of the danger or defective condition of the tree by the servant distinguishes this from *Corley's* case.

*Judgment affirmed upon the main bill of exceptions; cross-bill dismissed. All the Justices concur.*