ELIZA L. MAGEE v. MISSISSIPPI CENTRAL RAILROAD COMPANY.

[48 South. 723.]

1. RAILROADS. *Defective truck. Excessive ' speed. Wantonness. Evidence.*

The backing of a railroad train, consisting of a flat car, a caboose and a locomotive known to have a defective truck under its tender, the flanges of which were likely to mount the rails, at an excessive speed, evidences a wanton and reckless disregard of prudence and caution.

2. SAME. *Master and servant. Riding on engine. Trespasser. When section foreman is not.*

A section foreman, riding on a locomotive tender, was not a trespasser, as affecting the company's liability for his death caused by the tender jumping the track, where, after completing work, he was ordered or invited to board the train, the cars of which were crowded.

FROM the circuit court of Forrest county.

HON. WILLIAM H. COOK, Judge.

Mrs. Magee, appellant, was plaintiff in the court below; the railroad company, appellee, was defendant there. The suit was for damages because of the alleged wrongful killing by defendant of plaintiff's husband. From a judgment in defendant's favor, predicated of a peremptory instruction, the plaintiff appealed to the supreme court.

Thomas Magee, plaintiff's deceased husband, was a section foreman of the defendant, and on the day of his death was in charge of workmen engaged in clearing up the railroad track after a severe storm had blown trees across it. After this work had been completed, the trainmaster, who was on the scene in charge of a special relief train, consisting of a flat car, caboose, and engine, took all of the workmen and a large number of passengers who had been stranded at the scene of the wreckage, toward Brookhaven. The flat car and caboose were both crowded, as was the tender on the engine, and the deceased took a seat on the tool box at the rear end of the tender. The engine proceeded, running backward at a very rapid rate, estimated at thirty to forty miles an hour, when the tender jumped the track, threw deceased between the tender and caboose, and so injured him that he died. The testimony tended to show that the trucks of the tender, to defendant's knowledge, were defective in such a way as to cause the flanges of the wheels to ride the rails, thus making it dangerous to run at a rapid rate. The appellant contended that her deceased husband was ordered by the trainmaster to get aboard the relief train, while the defendant contended that only an invitation was extended him to do so, and that he could have waited and boarded the regular passenger train to go home. The defendant also contended that the plaintiff was guilty of contributory negligence in voluntarily taking a seat on the tool box, instead of getting in a safer place.

*Sullivan & Tally,* for appellant.

Under the facts in this case, conceding for the sake of argument that the deceased was guilty of contributory negligence, the defendant cannot avail itself thereof, under the decision of this court as laid down in the case of *Railroad Company v. Brown,* 77 Miss. 342, 28 South. 949.

"Contributory negligence," said this court in that case, "must continue to defeat a recovery where the railroad has been guilty of mere negligence, but where, as in this case, the negligence of the railroad's servant is marked by gross or wilful or reckless misconduct, the contributory negligence of the complaining party should not be permitted to shield the railroad from liability for such misconduct."

Did the defendant discharge its duty to the deceased when its trainmaster ordered him to get aboard a train when there was no seat for him except the one he did take?

The testimony of appellee's engineer, so clearly shows that his conduct in connection with the conduct of appellee's trainmaster was so grossly negligent and reckless that it amounted to wilfulness and wantoness in handling that train at a reckless rate of speed. *Martin v. Railroad Co.,* 77 Miss. 720, 27 South. 646; *Railroad Co. v. Byrd,* 89 Miss. 308, 42 South. 286; *Rymes v. Railroad Co.,* 85 Miss. 140, 37 South. 708; *Stevens v. Yazoo, etc., R. Co.,* 81 Miss. 195, 32 South. 311; *Bell v. Southern R'y Co.,* 87 Miss. 234, 30 South. 821; *Laurel, etc., Co. v. Mobile, etc., Co.,* 87 Miss. 675, 40 South. 259; *Allen v. Railroad Co.,* 88 Miss. 25, 40 South. 1009.

*Alexander & Alexander,* on same side.

The issue logically presented is whether the engineer was guilty of wilful recklessness and negligence under all the circumstances in backing his engine and train at a high rate of speed, over the road bed softened and weakened as it was by the unprecedented storm; and if he were guilty of wilful negligence or such gross negligence as evidenced recklessness then under

the numerous decisions of this court mere contributory negligence on the part of the injured person is not a defense. *Railroad Co. v. Brown,* 77 Miss. 338, 28 South. 949 ; *Vicksburg R'y Co. v. Barmore,* 85 Miss. 426, 38 South. 210 ; 87 Miss. 271, 39 South. 1013.

Closely akin to this rule, indeed almost another statement of it, is a rule, which has been frequently announced and sanctioned by this court, that where the negligent servant of the railroad company was aware of the peril of the party injured and failed to exercise due care, that is, care proportioned to the danger, the company is liable.   It is not necessary to cite authorities in support of this proposition.   Another proposition frequently announced during the present session, is that juries may infer wil ful or reckless negligence towards one exposed in a position of peril, although the negligent engineer or other employe testified that he was at his post of duty and did not even see the person injured.   Such are the cases of *Burns v. Alabama, etc., R'y Co.,* 93 Miss. 816, 47 South. 640.   Other cases along this line are cited in the opinion of the court in the case of *Burns v. Alabama, etc., R. Co.,* 93 Miss. 816, 47 South. 640.

Since the Code of 1906 was adopted, the presumption of negligence as to injuries caused by the running of cars applies in favor of employes.   The nature and effect of this presumption is fully discussed in *Mobile, etc., R. Co. v. Hicks,* 91 Miss. 273.   It is a presumption not of the negligence of any particular servants of the company but a presumption of liability.

The presumption is not met and overcome by testimony, which although it might show contributory negligence showed a state of facts which would make the company liable notwithstanding the contributory negligence.   As this court has more than once recently announced, it is not sufficient to show that plaintiff himself was negligent.   The defense of contributory negligence requires that the proof go further and show that plaintiff's negligence contributed to the injury. The presumption is not met and overcome by proof alone that Magee was negligent in seating himself upon the tender. The statute requires defendant to go

further and show that that act of negligence was such that the injury resulting from the derailment was in some measure caused or produced by that negligence. We are not contending that the statute in any event raises a presumption of wilful negligence but we do contend that it puts on the company the burden of a complete exculpation and this burden is not met unless the evidence goes beyond showing previous negligence on the part of the injured employe and shows that there was due care exercised on the part of the company after knowledge of the peril. The presumption of liability created by the statute never shifts. It is on the company until it shows not only the alleged act of negligence on the employe's part, but that the company thereafter and up to the time of the injury failed in no duty to him. It is very rare that a case is presented where there are as many concurring acts of negligence. The master was negligent in failing to provide a safe and suitable engine and tank, and in failing to see that the way or track was safe for the movement of trains; the trainmaster, who was the superior officer in charge of the whole train at the time of the accident, and who directed the speed and set aside the bulletin and rules of the company, was negligent—almost criminally negligent, it would seem—in ordering the train to be run at a reckless rate of speed; the engineer, Achors, who was in a separate department of labor, also about a different piece of work from Magee, was recklessly negligent according to his own admission. All of these acts of negligence by servants supervened after Magee had taken his seat along with other employes on the makeshift train. Every one of the acts of negligence were committed with full knowledge of the position in which the persons on the tank and caboose were in, and if these positions were perilous then with full knowledge of the peril.

*Jeff Truly* and *T. Brady, Jr.,* for appellee.

A careful consideration of the facts of this case will, we think, lead to the conclusion that plaintiff's deceased husband, Magee, was at the time of his death a mere licensee on defendant's work-

train; being a licensee, his widow, and legal representatives, are by the law denied a recovery. *Murdock v. Yazoo, etc., R. Co.,* 77 Miss. 489; *Illinois, etc., R. Co. v. Arnola,* 78 Miss. 787; *Illinois, etc., R. Co. v. Lee,* 71 Miss. 897; *Nichols v. Gulf, etc., R. Co.,* 83 Miss. 139; *Morehead v. Yazoo, etc., R. Co.,* 84 Miss. 123.

If we be mistaken in the contention just advanced, then, Magee at the time he met his death was an employe, not in the active discharge of duty, but, his work being over, was being transported free to his home. This being true this case falls clearly within the principle and within the reasoning of the principle announced in the case of *Lovett v. Gulf C. & F. S. Ry. Co.,* 79 S. W. 514, 34 Am. & Eng. R. R. Cases, N. S. 339, decided by the supreme court of Texas in 1904, in which the court said: "It must be considered that plaintiff was neither a passenger nor an employe in the discharge of his duty. He was simply a volunteer riding with permission of defendant gratuitously given in the place selected by himself. *Downing v. C. & O. Ry. Co.,* 28 W. Va. 742. He was riding upon a gravel train in a position from which he would easily be thrown by jerks and jolts to which such conveyances are subject even when carefully operated. In availing himself of the permission to ride he assumed all the risks which arose from the character of the conveyance and the ordinary methods of operating it. The servants of the railway company owed him only the duty of taking ordinary care not to injure him and subject to that duty had the right to operate the train as the exigencies of the business of their employer required."

But conceding that we are in error in this position. Conceding further that appellant is correct in the contention that Magee was injured by the negligence of the engineer, we then submit that under the facts disclosed by this record the engineer and Magee were fellow-servants on the particular occasion in question and that therefore appellant cannot recover.

The consideration of this question must be entered upon in

the light of that rule announced by Whitfield, C. J., in responding to the suggestion of error in the case of *Cheaves v. Southern Ry. Co.,* 82 Miss. 62. Speaking there of the method whereby it was to be determined whether one servant had the right to direct and control the services of another, he says:

"Whether one servant is under the control or directions of another servant is not to be determined by the rules of the company. It is to be determined always by the facts in the case and nature of the act performed. The facts surrounding the act itself and the actual relation of the two servants to the act. These facts are the only proper tests of whether one servant is under the control or direction of another."

We paraphrase that statement and say that it is equally applicable to cases like the one here presented.

"Whether one servant is the fellow-servant of another is not to be determined by the rules of the company. It is to be determined always by the facts in the case and the nature of the act performed. The facts surrounding the act itself and the actual relation of the two servants to the act, these facts are the only proper tests of whether one servant is or is not the fellow-servant of another."

In the light of this test we affirm that Achors, the engineer, and Magee, the section foreman, did on the occasion in question, occupy toward each other the relation of fellow-servant. That this was true prior to the adoption of the Constitution of 1890 is, of course, unquestionable. *New Orleans, etc., R. Co. v. Hughes,* 49 Miss. 258.

We further contend that under the facts of this case the general rule of the fellow-servant doctrine announced in the case just cited has not been changed by any provision of our Constitution. These men on the occasion in question did not occupy toward each other the position of one being a superior agent or officer of the other, nor did Achors have the right to control or direct the services of the party injured. They were not engaged on different trains of cars nor was one engaged

about a different piece of work from the other, neither did the injury result from the negligence of a fellow-servant engaged in another department of labor from that of the party injured. It is true that ordinarily it would be assumed that an engineer upon a freight or passenger train would be engaged in a different department of labor from a section foreman in the discharge of his ordinary duties in repairing track. But here we are to consider this case in the light of the test announced in the *Cheaves case, supra.* We find that not only the engineer and this section foreman, but all of the employes who were on the train in question, were engaged not only in the same department of labor but about the same piece of work. All of them were engaged, so far as the discussion of this branch of the case is concerned, in clearing the track.

Assuming, however, that we are mistaken in every position heretofore advanced; that no proposition of law for which we have heretofore contended is sound; assuming it to be proven that the accident in question was caused by the negligence of the engineer Achors in running an engine not intended for fast going over a track known to the engineer to be soft and dangerous for fast travel we still confidently assert that the appellant has no cause of action because of the contributory negligence of the deceased. For the condition of the track the railroad company, under the facts of this record, is, of coure, not responsible, it being the result of an unprecedented flood, a visitation of providence, an act of God. That the character of locomotive used might not have been suitable for ordinary passenger traffic raises no ground of liability against the railroad company. It is in testimony that the character of locomotive in use was of an approved type built by the Baldwin Locomotive Works, one of the largest and most up to date factories in the United States, and this fulfills the requirement of the law notwithstanding the statement of some machinist who did not profess to be expert, that the trucks ought to have been differently placed, or the tank differently arranged. We repeat that under the declaration the

only proof of negligence which can be considered on this hear-
ing is the conduct of Achors, the engineer and discharged em-
ploye, who evidences by his testimony the most extreme animus
against his former employer, willing to blacken his own repu-
tation and brand himself as a drunkard and worse in an en-
deavor to enable parties litigant to mulct the railroad company
in damages.     We concede that in considering the testimony the
truthfulness of Achors' statement of facts must be admitted
where they do not contravene common sense or shock probability.
His statement that he ran the train at the speed he alleges it
was being run by the direction of the roadmaster is, of course,
not competent proof.     But we may admit all that this court de-
sires to believe of Achors' story, yet the fact remains that no
matter how negligent the railroad company may have been, no
matter how negligent Achors, this discharged employe and dis-
reputable witness claims to have been, Magee's calamity was
caused by Magee's negligence.

He voluntarily boarded the train, he himself selected his seat,
he of his own motion exposed himself to danger.     That there
was ample place for him to ride in safety the record thoroughly
discloses and the trial judge who heard the witnesses and gave
proper credence to all that was said so solemnly ruled.     We
admit that it must be a "rare case of negligence" which a trial
judge should take from the court, but this rule we apprehend
only applies to cases of disputed fact, or to cases where under
one view of the facts the plaintiff might not have been guilty
of contributory negligence.     But where there is no dispute as
to the facts, where under no reasonable view of the proof can
a reasonable mind escape the conclusion that the plaintiff was
guilty of contributory negligence, the rule is otherwise.     It then
becomes the duty of the court to withdraw the case from the
jury and direct a verdict for the defendant.

"Wherever the facts are not in dispute and these facts as
admitted or proved show so clearly that the plaintiff's own neg-
ligence has proximately and naturally contributed to the injury

that there can be no reasonable difference of opinion in regard to it the question of the defendant's liability may be properly decided by the court as a question of law."   3 Hutchinson, Carriers, sec. 1175.   *Goodlet v. Railroad Co.,* 122 U. S. 391.   This is the rule in our own state.

"When the evidence neither proves nor tends to prove liability on the part of a defendant, or where the facts shown in evidence and the plain inferences from those facts make it clear that plaintiff's own negligence produced or contributed as the proximate cause to produce the injury for which recovery in damages is sought, then, and in every such case, the question is for the court alone." *McMurtry v. Railroad Co.,* 67 Miss. 601.   See also *Bridges v. Railway Co.,* 86 Miss. 584.   And as strikingly in point, *Illinois, etc., R. Co. v. Emerson,* 88 Miss. 608 : 3 Elliott on Railroads, sec. 1304.

If, therefore, upon a consideration of this record it appeared to the trial judge and would appear to all reasonable men familiar with the operation of railroad trains that Magee was negligent and that his negligence contributed to his injury it was not only the province of the trial judge but his sworn duty to withdraw the case from the jury.

Take the case of *Martin v. Kansas, etc., R. Co.,* 77 Miss. 727, and read the language of that revered and lamented jurist, Judge CALHOON, who for so many years in company with the present chief justice adorned the supreme bench by his presence and illuminated its reports by his wisdom : "It is obviously perilous to ride on an engine and a habit of doing so by the intestate does not make it any less dangerous.   *Warden v. Louisville, etc., R. Co.,* 94 Ala. 277."

Take the *Warden case* referred to, an Alabama case it is true, but the opinion thorough and painstaking as were all of the writings of the distinguished jurist who was the organ of the court, McCLELLAN : "The fact that one is in the habit of doing an obviously dangerous thing does not make his act any the less dangerous one.   The fact that many or all of a limited class of persons customarily ride upon the pilot of an engine does **not**

alter the characteristic of obvious peril which the law imputes to that position. It is negligence *per se* for persons to walk upon the track of railroads. Doubtless many persons are in the habit of using the track in this way. Yet it has never been supposed, and it cannot be the law, that such custom would convert the track, which the law declares to be *per se* a dangerous place, into a safe place. So a person may be in the habit of crossing railway tracks without stopping and looking and listening for approaching trains; yet we have never heard it suggested that such person, when he finally reaps the penalty of his lack of care, is, because of such habit, not guilty of contributory negligence as a matter of law. Custom and usage may be relied upon to excuse the violation of a rule when the act involved is not negligent in itself, but only by relation to the rule violated; and so, when an act may be done in two or more ways, a resort to neither of which involves such obvious peril as raises the legal presumption or conclusion of negligence in the doing of it, a custom or usage to do it in a particular way may be looked to as tending to show that it was not negligence to resort to that method in the instance under consideration. But custom can in no case impart the qualities of due care and prudence to an act which involves obvious peril, which is voluntarily and unnecessarily done, and which the law itself declares to be negligent. *Glover v. Scotten,* 82 Mich. 369; *Hicket v. Boston & L. R. Co.,* 14 Allen, 429; *Judkins v. Maine Cent. R. Co.,* 6 New Eng. Rep. 715, 80 Me. 417; *Chicago, R. I. & P. R. Co. v. Clark,* 108 Ill. 113, 15 Am. & Eng. R. R. Cas. 261; *Southern Kansas R. Co. v. Robbins,* 43 Kas. 145; *Humphreys v. Newport News & M. V. Co.,* 33 W. Va. 138; *Hibler v. McCartney,* 31 Ala. 501; *Bryant, v. Central Vermont R. Co.,* 56 Vt. 710."

Argued orally by *C. H. Alexander,* for appellant, and by *Jeff. Truly* and *T. Brady, Jr.,* for appellee.

Mayes, J., delivered the opinion of the court.
Under our view in this case it is not material for us to decide

what was the exact legal status of Magee toward the railroad company at the time he received the injury causing his death. It is certain that he was not a trespasser. We have examined the facts with great care, and have also examined the citations of counsel for appellee. The distinction between the facts in the authorities cited by appellee and the facts of this case easily distinguish the cases and demonstrate the inapplicability of the authorities relied on for affirmance. In all the cases cited for appellee the liability turned upon a question of mere negligence, and not wilful negligence or reckless disregard of duty on the part of the railroad company. The case here tends, at least, to show the most wanton and reckless disregard of all prudence and caution on the part of the employes of the company in charge of the train. This case is controlled by the case of *Railroad Company v. Brown,* 77 Miss. 338, 28 South. 949. That case, *supra,* contains such a clear statement of the law applicable to this case that it need not be here repeated.

No peremptory instruction for the railroad company should have been given.

*Reversed and remanded.*